1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6

7

8

9

10

11

JEREMY J. ENGLISH,

                              Plaintiff,

      v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                              Defendant.

Case No. 3:10-cv-05615-RJB-KLS

REPORT AND RECOMMENDATION

Noted for October 7, 2011

12

13

14

15

16

17

18

19

20

21

        Plaintiff has brought this matter for judicial review of defendant's denial of his

applications for disability insurance supplemental security income ("SSI") benefits.  This matter

has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and

Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S.

261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned

submits the following Report and Recommendation for the Court's review, recommending that

for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter

be remanded for further administrative proceedings.

22

FACTUAL AND PROCEDURAL HISTORY

23

24

25

26

        On August 28, 2006, plaintiff filed an application for SSI benefits, and on April 15, 2007,

he filed another application for disability insurance benefits, alleging disability as of August 2,

2001, due to memory, comprehension and concentration problems, depression, anxiety and knee

and back pain. See Administrative Record ("AR") 10, 109, 116, 145.  Both applications were

REPORT AND RECOMMENDATION - 1

1    denied upon initial administrative review and on reconsideration. See AR 55, 62, 64. A hearing

2    was held before an administrative law judge ("ALJ") on October 20, 2009, at which plaintiff,

3    represented by counsel, appeared and testified, as did a medical expert and a vocational expert.

4    See Tr. 18-51.

5            On December 8, 2009, the ALJ issued a decision in which plaintiff was determined to be

6    not disabled. See AR 10-17. Plaintiff's request for review of the ALJ's decision was denied by

7    the Appeals Council on July 3, 2010, making the ALJ's decision defendant's final decision. See

8    AR 1; see also 20 C.F.R. § 404.981, § 416.1481. On August 27, 2010, plaintiff filed a complaint

9    in this Court seeking judicial review of defendant's decision. See ECF #1-#3. The administrative

10   record was filed with the Court on November 30, 2010. See ECF #10. The parties have

11   completed their briefing, and thus this matter is now ripe for judicial review and a decision by

12   the Court.

13           Plaintiff argues defendant's decision should be reversed and remanded for an award of

14   benefits or, in the alternative, for further administrative proceedings because the ALJ erred: (1)

15   in failing to properly identify all of plaintiff's severe impairments; (2) in evaluating the medical

16   opinion source evidence in the record; (3) in assessing plaintiff's credibility; (4) in assessing him

17   residual functional capacity; and (5) in finding him to be capable performing other jobs existing

18   in significant numbers in the national economy. The undersigned agrees the ALJ erred in

19   determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that

20   although defendant's decision should be reversed, this matter should be remanded for further

21   administrative proceedings.

22

23                                              DISCUSSION

24           This Court must uphold defendant's determination that plaintiff is not disabled if the

REPORT AND RECOMMENDATION - 2

1    proper legal standards were applied and there is substantial evidence in the record as a whole to

2    support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).

3    Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

4    support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767

5    F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance. See

6
7    Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F.

8    Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational

9    interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577,

10   579 (9th Cir. 1984).

11   I.       The ALJ's Step Two Determination

12           Defendant employs a five-step "sequential evaluation process" to determine whether a

13   claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found

14   disabled or not disabled at any particular step thereof, the disability determination is made at that

15   step, and the sequential evaluation process ends. See id.  At step two of that process, the ALJ

16   must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920.  An impairment

17
18   is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do

19   basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also

20   Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those

21   "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR

22   85- 28, 1985 WL 56856 *3.

23
24           An impairment is not severe only if the evidence establishes a slight abnormality that has

25   "no more than a minimal effect on an individual[']s ability to work."  See SSR 85-28, 1985 WL

26   56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841

REPORT AND RECOMMENDATION - 3

1   F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that his "impairments or their

2   symptoms affect her [his] ability to perform basic work activities." Edlund v. Massanari, 253

3   F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The

4   step two inquiry described above, however, is a *de minimis* screening device used to dispose of

5   groundless claims. See Smolen, 80 F.3d at 1290.

6          In this case, the ALJ found plaintiff's hypertension, diabetes, obesity, major depressive

7   disorder, and personality disorder to be severe impairments. See AR 12.  Plaintiff argues the ALJ

8   erred also in failing to find his plantar fasciitis, calcaneal bursitis, pronation syndrome, and early

9

10  tarsal tunnel syndrome to be severe impairments as well, given that he was diagnosed with and

11  received treatment for those impairments, and that he reported pain and discomfort and was

12  found to have some other symptoms related thereto. See AR 300-01, 314-15.  But the mere fact

13  that a claimant has been diagnosed with an impairment – or even has received treatment therefor

14  – is not sufficient to establish severity, especially, as here, the medical records plaintiff cites fails

15  to show he has any actual work-related limitations (as opposed to merely symptoms) stemming

16  therefrom. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an

17

18  impairment is insufficient proof of a disability").

19          Nor do plaintiff's reports of pain and discomfort contained in those records demonstrate

20  the above impairments are severe.  First, as discussed in greater detail below, the ALJ properly

21  discounted plaintiff's credibility concerning his symptoms and limitations.  Second, although the

22  ALJ must take into account a claimant's pain and other symptoms at step two of the sequential

23  disability evaluation process (see 20 C.F.R. § 404.1529, § 416.929), the severity determination is

24  made solely on the basis of the objective medical evidence in the record. See SSR 85-28, 1985

25  WL 56856 *4 (at step two medical evidence alone is evaluated to assess effects of impairments

26

REPORT AND RECOMMENDATION - 4

1    on ability to do basic work activities).  Accordingly, the ALJ did not err here.

2    II.    The ALJ's Evaluation of the Medical Evidence in the Record

3         The ALJ is responsible for determining credibility and resolving ambiguities and

4    conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

5    Where the medical evidence in the record is not conclusive, "questions of credibility and

6    resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

7    642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v.

8    Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining

9    

10   whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

11   all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

12   within this responsibility." Id. at 603.

13   

14        In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

15   "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this

16   "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

17   stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences

18   "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may

19   draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

20   F.2d 747, 755, (9th Cir. 1989).

21        The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

22   opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

23   1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can

24   only be rejected for specific and legitimate reasons that are supported by substantial evidence in

25   the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him

26   

REPORT AND RECOMMENDATION - 5

1   or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984)

2   (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative

3   evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981);

4   <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

5          In general, more weight is given to a treating physician's opinion than to the opinions of

6   those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need

7   not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

8   inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v.</u>

9   <u>Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see also</u> <u>Thomas v.</u>

10  <u>Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir.

11  2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a

12  nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may

13  constitute substantial evidence if "it is consistent with other independent evidence in the record."

14  <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

15         Plaintiff argues the ALJ erred in failing to acknowledge James A. Wright, D.P. M., found

16  in early June 2008, that he had "severely decreased dorsiflexory range of motion available at the

17  ankle bilaterally with diffuse pain through the central aspect of the arch," as well as other similar

18  findings Dr. Wright made in early August 2008. AR 300-01.  But Dr. Wright did not opine as to

19  any specific work-related limitations stemming from those findings.  Indeed, Dr. Wright noted in

20  early June 2008, that plaintiff reported working "over the last three months . . . three to four 12

21  hour shifts" in "a warehouse job." AR 300.  In early August 2008, he noted plaintiff continued

22  "to work 8-10 hour shifts." AR 301.  Dr. Wright, however, gave no indication that plaintiff was

23  physically unable to remain working at that job.

REPORT AND RECOMMENDATION - 6

1

2          Plaintiff also argues the ALJ erred in not acknowledging the early April 2008 opinion of

3      Leyton Jump, M.D., that he had "[p]ainful feet secondary to severe obesity." AR 315.  While this

       does reveal the existence of obesity and pain, as with Dr. Wright, Dr. Jump gave no indication he
4
       felt plaintiff had any work-related limitations stemming therefrom. See id.  Indeed, Dr. Wright
5
       noted that plaintiff – who had been working at his warehouse job for about the past month at the
6
       time – was working "through 12 hour shifts" and had "not missed" any work. AR 314-15.  Thus,
7
       the ALJ committed no error in merely noting plaintiff's foot problems (see AR 15), as the record
8
       does not show they resulted in any significant work-related limitations.
9

10     III.      The ALJ's Assessment of Plaintiff's Credibility

11         Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at

12     642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.

13     In addition, the Court may not reverse a credibility determination where that determination is

14     based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for

15     discrediting a claimant's testimony should properly be discounted does not render the ALJ's

16     determination invalid, as long as that determination is supported by substantial evidence.
17
       Tonapetyan , 242 F.3d at 1148.
18
           To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent
19
       reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what
20
       testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also
21
       Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the
22
       claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear
23

24     and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of

25     malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

26

       REPORT AND RECOMMENDATION - 7

1

2

3

4

5

6

7

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

8

9

10

11

12

13

14

15

16

17

Plaintiff argues the ALJ did not state any specific, clear and convincing reasons for not finding him to be fully credible regarding his symptoms and limitations.  The undersigned does not agree.  Plaintiff's first challenge to the ALJ's credibility determination – that the ALJ erred by citing to two Fifth Circuit cases for the propositions that objective medical evidence may be considered in discounting a claimant's credibility and that the mere fact that working may cause the claimant pain or discomfort does not mandate a finding of total disability (see AR 15), since decisions from that Circuit do not apply to this case – is wholly without merit.  It is well settled that case law from other Circuits, though not binding, can be persuasive.  In addition, neither of the propositions set forth by the ALJ are at odds with the law of this Circuit.

18

19

20

21

22

23

24

Indeed, it is clearly established in the Ninth circuit that an ALJ's determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  As discussed above, the ALJ did not err in evaluating the medical evidence in the record concerning plaintiff's physical impairments.  Accordingly, he also did not err in finding plaintiff to be not fully credible in part on this basis. See AR 15.

25

26

In regard to the issue of being able to work despite the fact that it may cause a claimant to experience pain or discomfort, plaintiff argues this is not a valid reason for finding him to be not

REPORT AND RECOMMENDATION - 8

fully credible, because he had to stop working due to his impairments. But as just discussed, the record shows plaintiff continued to work extensively after his alleged onset date of disability at a warehouse job at a level not at all commensurate with his allegation of disability. See AR 300 (works "three to four 12 hour shifts"); 301 ("continues to work 8-10 hour shifts"); 314 (working 12-hour shifts unloading trucks); 315 (working through 12 hour shifts without missing work). There is other evidence in the record that plaintiff worked many hours providing what appears to have been essentially round-the-clock childcare as well. See 237 (doing child care seven days per week, including "entire weekends," being paid "for 40 odd hours a week of babysitting," even though reportedly "putting in over 70 or 80 hours a week"); 240 (putting "in about 400 hours per month working as a babysitter"); 280 (watching "sister's children 600 hours a month"; stating he "no longer has time to do anything else other than care for" them).[1]

The ALJ also discounted plaintiff's credibility on the basis that plaintiff's activities of daily living – including, as just discussed, the extensive hours of physical work he performed – were consistent with a light exertional work level. See AR 15. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (recognizing "two grounds for using daily activities to form the basis of an adverse credibility determination": first, such activities can "meet the threshold for transferable work skills"; second, they can "contradict [the claimant's] other testimony"). Clearly, the work plaintiff has reported performing meets the first standard here. It also meets the second standard. See Smolen, 80 F.3d at 1284 n.7 (claimant must be "able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting").

---

[1] Plaintiff citation to Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007) – in which the the Ninth Circuit stated that the claimant's inability to work for more than a short period of time because of his impairments, did not mean "he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment" – thus is inapplicable here. Id. at 1038 (emphasis in original).

REPORT AND RECOMMENDATION - 9

1

IV.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

2

3        If a disability determination "cannot be made on the basis of medical factors alone at step

three of the evaluation process," the ALJ must identify the claimant's "functional limitations and

4

restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p,

5

6        1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at

7        step four to determine whether he or she can do his or her past relevant work, and at step five to

8        determine whether he or she can do other work. See id.  It thus is what the claimant "can still do

9        despite his or her limitations." Id.

10       A claimant's residual functional capacity is the maximum amount of work the claimant is

11       able to perform based on all of the relevant evidence in the record. See id.  However, an inability

12       to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ

13       must consider only those limitations and restrictions "attributable to medically determinable

14

impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the

15

16       claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be

17       accepted as consistent with the medical or other evidence." Id. at *7.

18       The ALJ in this case assessed plaintiff with the residual functional capacity to perform

19       light work, along with a limitation to sitting and standing as needed, and a need to avoid both

20

commercial driving and hazards such as heights and dangerous machinery. See AR 13.  Plaintiff

21

22       argues this assessment is erroneous, because it is not based on a proper evaluation of the medical

23       evidence in the record, including the findings and opinions of Drs. Jump and Wright discussed

24       above, and because the ALJ erred in assessing plaintiff's credibility.  But as just explained, the

25       ALJ did not err in evaluating the above medical evidence in the record or in assessing plaintiff's

26       credibility.  As such, ALJ also did not err in assessing plaintiff's residual functional capacity on

REPORT AND RECOMMENDATION - 10

1    either of these bases.

2        Plaintiff goes on to argue the ALJ also erred in failing to include in his residual functional

3    capacity assessment several moderate mental functional limitations found by Thomas Clifford,

4    M.D., and by Matthew Comrie, Psy.D., two non-examining physicians, in early September 2006,

5    and late January 2008, respectively. See AR 264-65, 296-97.  Specifically, plaintiff asserts it was

6    error for the ALJ to not fully adopt those limitations without explanation.  In regard to the

7    existence of mental functional limitations, the ALJ stated in his decision that plaintiff had those

8    limitations "**as testified to by the medical expert which are identified hereinafter**." AR 13

9    (emphasis in original).  The ALJ then went on to state the medical expert found plaintiff was

10   "hypersensitive" and had "the ability to remember, understand and carryout simple and detailed

11   instructions in a low stress working environment." AR 15.

12       The moderate mental functional limitations to which plaintiff refers, were checked off in

13   Section I ("SUMMARY CONCLUSIONS") of the mental residual functional capacity form each

14   physician completed. See AR 264-65, 296-97.  Pursuant to the directive contained in the Social

15   Security Administration's Program Operations Manual System ("POMS"), "**[i]t is the narrative**

16   written by the [evaluating] psychiatrist or psychologist **in [S]ection III [("FUNCTIONAL**

17   **CAPACITY ASSESSMENT")]** . . . **that adjudicators are to use as the assessment of RFC.**"

18   POMS DI 25020.010(B)(1) (emphasis in original)[2]; see also AR 266, 298.  While it is true the

19   POMS "does not have the force of law," the Ninth Circuit has recognized it as being "persuasive

20   authority." Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006).

21   The above POMS makes clear, furthermore, that it is the narrative contained in Section III that

22   the ALJ is supposed to use in assessing plaintiff's RFC.

---

[2] Available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010.

REPORT AND RECOMMENDATION - 11

1

2    In the narrative comments he provided, Dr. Clifford opined that plaintiff was capable of
the following:

3
- "[P]erforming simple repetitive tasks and some more complex tasks
and persisting for 2 hours";
4
- "[R]elating appropriately to a supervisor and coworkers in a mostly
5      nonpublic setting"; and
- "[G]o[ing] out alone, us[ing] public transportation, be[ing] aware of
6      normal hazards and tak[ing] appropriate precautions."

7    AR 266.  Dr. Comrie for his part stated in the narrative section of his form that plaintiff was able

8    to "accept instructions but should have limited public contact," could perform both "simple and

9    detailed tasks and manage his funds," could perform activities without "special supervision," and

10   could "maintain attendance and persist through normal work periods." AR 298.

11

12       The mental functional limitations testified to by the medical expert, and adopted by the

13   ALJ, are largely in line with those found by Drs. Clifford and Comrie.  While Dr. Clifford stated

14   that plaintiff could perform "some more complex tasks" as opposed to "detailed" tasks found by

15   Dr. Comrie and the medical expert, the ALJ was not remiss in adopting the latter opinions over

16   that of Dr. Clifford, as those of Dr. Comrie and the medical expert are consistent with the weight

17   of the objective medical evidence in the record.  For example, one examining psychiatrist found

18   plaintiff could perform both "detailed and complex tasks." See 280.  As such, the majority of the

19   medical sources who have opined as to this issue agree with the ALJ.

20

21       On the other hand, Dr. Clifford and Dr. Comrie found plaintiff should work in "a mostly

22   nonpublic setting" and have "limited public contact" respectively. AR 266, 298.  In addition, the

23   medical expert testified that it "would be preferable" for plaintiff to work "without any necessity

24   for public contact." AR 42.  While the examining psychiatrist noted above, Eric Lavy, M.D., did

25   not find any problems in regard to plaintiff's ability to interact with the public (see AR 280), the

26   ALJ provided no explanation why he rejected the limitations on public contact assessed by Dr.

REPORT AND RECOMMENDATION - 12

Clifford and Dr. Comrie and by the medical expert, even though the ALJ expressly stated in his

decision that he was adopting those testified to by the medical expert. See AR 13, 15.  In light of

this error, it thus cannot be said that the ALJ's RFC assessment is entirely accurate.

V.       The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability

evaluation process the ALJ must show there are a significant number of jobs in the national

economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the

testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines

(the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th

Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the

hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987);

Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony

therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See

Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the

claimant's disability "must be accurate, detailed, and supported by the medical record." Id.

(citations omitted).  The ALJ, however, may omit from that description those limitations he or

she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert inquiring

as to whether an individual such as plaintiff who was limited to light or sedentary work would be

able to perform other jobs. See AR 48.  But it does not appear that the ALJ presented any of the

mental functional limitations he adopted to the vocational expert, or the limitation on public

REPORT AND RECOMMENDATION - 13

contact found by Dr. Clifford, Dr. Comrie and the medical expert. See AR 48-49. As such, the

hypothetical question the ALJ posed, like his RFC assessment, cannot be said to be completely

accurate. Thus, the ALJ erred here as well.

Plaintiff argues the ALJ also erred in light of his errors in evaluating the opinions of Dr.

Jump and Dr. Wright, and in assessing plaintiff's credibility. As discussed above, however, the

ALJ did not err in this regard. Accordingly, no error at step five is found on that basis. Plaintiff

goes on to argue that the ALJ's step five determination cannot be upheld, because the transcript

of the vocational expert's testimony includes many sections in which that testimony is described

as being inaudible, some of which appears to be supportive of a finding of disability. See AR 48-

49. While there are some inaudible portions in the relevant portion of the transcript, it is entirely

unclear that such portions contain evidence supportive of plaintiff's claims, nor has any showing

been made as to exactly in what ways they appear to be supportive. Nevertheless, for the reasons

discussed herein, remand for further administrative proceedings is warranted.

VI.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award

benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the

proper course, except in rare circumstances, is to remand to the agency for additional

investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is

unable to perform gainful employment in the national economy," that "remand for an immediate

award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further

administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

REPORT AND RECOMMENDATION - 14

v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
> claimant's] evidence, (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made, and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled were such
> evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Because issues still remain with respect to plaintiff's mental residual functional capacity and his

ability to perform other jobs existing in significant numbers in the national economy, this matter

should be remanded to defendant for further administrative proceedings.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded

plaintiff was not disabled, and thus should reverse defendant's decision and remand this matter

for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

72(b), the parties shall have **fourteen (14) days** from service of this Report and

Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file

objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn,

474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk

is directed set this matter for consideration on **October 7, 2011**, as noted in the caption.

DATED this 19th day of September, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15