UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JEREMY J. ENGLISH,<br><br>       Plaintiff,<br><br> v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>       Defendant. | Case No. 3:10-cv-05615-RJB-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for October 7, 2011 |

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On August 28, 2006, plaintiff filed an application for SSI benefits, and on April 15, 2007, he filed another application for disability insurance benefits, alleging disability as of August 2, 2001, due to memory, comprehension and concentration problems, depression, anxiety and knee and back pain. See Administrative Record ("AR") 10, 109, 116, 145. Both applications were

REPORT AND RECOMMENDATION - 1

denied upon initial administrative review and on reconsideration. See AR 55, 62, 64. A hearing was held before an administrative law judge ("ALJ") on October 20, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. See Tr. 18-51.

On December 8, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 10-17. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 3, 2010, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981, § 416.1481. On August 27, 2010, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #1-#3. The administrative record was filed with the Court on November 30, 2010. See ECF #10. The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings because the ALJ erred: (1) in failing to properly identify all of plaintiff's severe impairments; (2) in evaluating the medical opinion source evidence in the record; (3) in assessing plaintiff's credibility; (4) in assessing him residual functional capacity; and (5) in finding him to be capable performing other jobs existing in significant numbers in the national economy. The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that although defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the

REPORT AND RECOMMENDATION - 2

proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of that process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841

REPORT AND RECOMMENDATION - 3

F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that his "impairments or their symptoms affect her [his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

In this case, the ALJ found plaintiff's hypertension, diabetes, obesity, major depressive disorder, and personality disorder to be severe impairments. See AR 12. Plaintiff argues the ALJ erred also in failing to find his plantar fasciitis, calcaneal bursitis, pronation syndrome, and early tarsal tunnel syndrome to be severe impairments as well, given that he was diagnosed with and received treatment for those impairments, and that he reported pain and discomfort and was found to have some other symptoms related thereto. See AR 300-01, 314-15. But the mere fact that a claimant has been diagnosed with an impairment – or even has received treatment therefor – is not sufficient to establish severity, especially, as here, the medical records plaintiff cites fails to show he has any actual work-related limitations (as opposed to merely symptoms) stemming therefrom. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability").

Nor do plaintiff's reports of pain and discomfort contained in those records demonstrate the above impairments are severe. First, as discussed in greater detail below, the ALJ properly discounted plaintiff's credibility concerning his symptoms and limitations. Second, although the ALJ must take into account a claimant's pain and other symptoms at step two of the sequential disability evaluation process (see 20 C.F.R. § 404.1529, § 416.929), the severity determination is made solely on the basis of the objective medical evidence in the record. See SSR 85-28, 1985 WL 56856 *4 (at step two medical evidence alone is evaluated to assess effects of impairments

REPORT AND RECOMMENDATION - 4

on ability to do basic work activities). Accordingly, the ALJ did not err here.

II.     The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him

REPORT AND RECOMMENDATION - 5

or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff argues the ALJ erred in failing to acknowledge James A. Wright, D.P. M., found in early June 2008, that he had "severely decreased dorsiflexory range of motion available at the ankle bilaterally with diffuse pain through the central aspect of the arch," as well as other similar findings Dr. Wright made in early August 2008. AR 300-01. But Dr. Wright did not opine as to any specific work-related limitations stemming from those findings. Indeed, Dr. Wright noted in early June 2008, that plaintiff reported working "over the last three months . . . three to four 12 hour shifts" in "a warehouse job." AR 300. In early August 2008, he noted plaintiff continued "to work 8-10 hour shifts." AR 301. Dr. Wright, however, gave no indication that plaintiff was physically unable to remain working at that job.

Plaintiff also argues the ALJ erred in not acknowledging the early April 2008 opinion of Leyton Jump, M.D., that he had "[p]ainful feet secondary to severe obesity." AR 315. While this does reveal the existence of obesity and pain, as with Dr. Wright, Dr. Jump gave no indication he felt plaintiff had any work-related limitations stemming therefrom. See id. Indeed, Dr. Wright noted that plaintiff – who had been working at his warehouse job for about the past month at the time – was working "through 12 hour shifts" and had "not missed" any work. AR 314-15. Thus, the ALJ committed no error in merely noting plaintiff's foot problems (see AR 15), as the record does not show they resulted in any significant work-related limitations.

III.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

REPORT AND RECOMMENDATION - 7

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

Plaintiff argues the ALJ did not state any specific, clear and convincing reasons for not finding him to be fully credible regarding his symptoms and limitations. The undersigned does not agree. Plaintiff's first challenge to the ALJ's credibility determination – that the ALJ erred by citing to two Fifth Circuit cases for the propositions that objective medical evidence may be considered in discounting a claimant's credibility and that the mere fact that working may cause the claimant pain or discomfort does not mandate a finding of total disability (see AR 15), since decisions from that Circuit do not apply to this case – is wholly without merit. It is well settled that case law from other Circuits, though not binding, can be persuasive. In addition, neither of the propositions set forth by the ALJ are at odds with the law of this Circuit.

Indeed, it is clearly established in the Ninth circuit that an ALJ's determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). As discussed above, the ALJ did not err in evaluating the medical evidence in the record concerning plaintiff's physical impairments. Accordingly, he also did not err in finding plaintiff to be not fully credible in part on this basis. See AR 15.

In regard to the issue of being able to work despite the fact that it may cause a claimant to experience pain or discomfort, plaintiff argues this is not a valid reason for finding him to be not

REPORT AND RECOMMENDATION - 8

fully credible, because he had to stop working due to his impairments. But as just discussed, the record shows plaintiff continued to work extensively after his alleged onset date of disability at a warehouse job at a level not at all commensurate with his allegation of disability. See AR 300 (works "three to four 12 hour shifts"); 301 ("continues to work 8-10 hour shifts"); 314 (working 12-hour shifts unloading trucks); 315 (working through 12 hour shifts without missing work). There is other evidence in the record that plaintiff worked many hours providing what appears to have been essentially round-the-clock childcare as well. See 237 (doing child care seven days per week, including "entire weekends," being paid "for 40 odd hours a week of babysitting," even though reportedly "putting in over 70 or 80 hours a week"); 240 (putting "in about 400 hours per month working as a babysitter"); 280 (watching "sister's children 600 hours a month"; stating he "no longer has time to do anything else other than care for" them).[1]

The ALJ also discounted plaintiff's credibility on the basis that plaintiff's activities of daily living – including, as just discussed, the extensive hours of physical work he performed – were consistent with a light exertional work level. See AR 15. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (recognizing "two grounds for using daily activities to form the basis of an adverse credibility determination": first, such activities can "meet the threshold for transferable work skills"; second, they can "contradict [the claimant's] other testimony"). Clearly, the work plaintiff has reported performing meets the first standard here. It also meets the second standard. See Smolen, 80 F.3d at 1284 n.7 (claimant must be "able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting").

---

[1] Plaintiff citation to Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007) – in which the the Ninth Circuit stated that the claimant's inability to work for more than a short period of time because of his impairments, did not mean "he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment" – thus is inapplicable here. Id. at 1038 (emphasis in original).

REPORT AND RECOMMENDATION - 9

IV.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case assessed plaintiff with the residual functional capacity to perform light work, along with a limitation to sitting and standing as needed, and a need to avoid both commercial driving and hazards such as heights and dangerous machinery. See AR 13. Plaintiff argues this assessment is erroneous, because it is not based on a proper evaluation of the medical evidence in the record, including the findings and opinions of Drs. Jump and Wright discussed above, and because the ALJ erred in assessing plaintiff's credibility. But as just explained, the ALJ did not err in evaluating the above medical evidence in the record or in assessing plaintiff's credibility. As such, ALJ also did not err in assessing plaintiff's residual functional capacity on

REPORT AND RECOMMENDATION - 10

either of these bases.

Plaintiff goes on to argue the ALJ also erred in failing to include in his residual functional capacity assessment several moderate mental functional limitations found by Thomas Clifford, M.D., and by Matthew Comrie, Psy.D., two non-examining physicians, in early September 2006, and late January 2008, respectively. See AR 264-65, 296-97. Specifically, plaintiff asserts it was error for the ALJ to not fully adopt those limitations without explanation. In regard to the existence of mental functional limitations, the ALJ stated in his decision that plaintiff had those limitations "**as testified to by the medical expert which are identified hereinafter**." AR 13 (emphasis in original). The ALJ then went on to state the medical expert found plaintiff was "hypersensitive" and had "the ability to remember, understand and carryout simple and detailed instructions in a low stress working environment." AR 15.

The moderate mental functional limitations to which plaintiff refers, were checked off in Section I ("SUMMARY CONCLUSIONS") of the mental residual functional capacity form each physician completed. See AR 264-65, 296-97. Pursuant to the directive contained in the Social Security Administration's Program Operations Manual System ("POMS"), "**[i]t is the narrative written by the [evaluating] psychiatrist or psychologist in [S]ection III [("FUNCTIONAL CAPACITY ASSESSMENT")] . . . that adjudicators are to use as the assessment of RFC.**" POMS DI 25020.010(B)(1) (emphasis in original)[2]; see also AR 266, 298. While it is true the POMS "does not have the force of law," the Ninth Circuit has recognized it as being "persuasive authority." Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006). The above POMS makes clear, furthermore, that it is the narrative contained in Section III that the ALJ is supposed to use in assessing plaintiff's RFC.

---

[2] Available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010.

REPORT AND RECOMMENDATION - 11

In the narrative comments he provided, Dr. Clifford opined that plaintiff was capable of the following:

- "[P]erforming simple repetitive tasks and some more complex tasks and persisting for 2 hours";
- "[R]elating appropriately to a supervisor and coworkers in a mostly nonpublic setting"; and
- "[G]o[ing] out alone, us[ing] public transportation, be[ing] aware of normal hazards and tak[ing] appropriate precautions."

AR 266. Dr. Comrie for his part stated in the narrative section of his form that plaintiff was able to "accept instructions but should have limited public contact," could perform both "simple and detailed tasks and manage his funds," could perform activities without "special supervision," and could "maintain attendance and persist through normal work periods." AR 298.

The mental functional limitations testified to by the medical expert, and adopted by the ALJ, are largely in line with those found by Drs. Clifford and Comrie. While Dr. Clifford stated that plaintiff could perform "some more complex tasks" as opposed to "detailed" tasks found by Dr. Comrie and the medical expert, the ALJ was not remiss in adopting the latter opinions over that of Dr. Clifford, as those of Dr. Comrie and the medical expert are consistent with the weight of the objective medical evidence in the record. For example, one examining psychiatrist found plaintiff could perform both "detailed and complex tasks." See 280. As such, the majority of the medical sources who have opined as to this issue agree with the ALJ.

On the other hand, Dr. Clifford and Dr. Comrie found plaintiff should work in "a mostly nonpublic setting" and have "limited public contact" respectively. AR 266, 298. In addition, the medical expert testified that it "would be preferable" for plaintiff to work "without any necessity for public contact." AR 42. While the examining psychiatrist noted above, Eric Lavy, M.D., did not find any problems in regard to plaintiff's ability to interact with the public (see AR 280), the ALJ provided no explanation why he rejected the limitations on public contact assessed by Dr.

REPORT AND RECOMMENDATION - 12

Clifford and Dr. Comrie and by the medical expert, even though the ALJ expressly stated in his decision that he was adopting those testified to by the medical expert. See AR 13, 15. In light of this error, it thus cannot be said that the ALJ's RFC assessment is entirely accurate.

V.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert inquiring as to whether an individual such as plaintiff who was limited to light or sedentary work would be able to perform other jobs. See AR 48. But it does not appear that the ALJ presented any of the mental functional limitations he adopted to the vocational expert, or the limitation on public

REPORT AND RECOMMENDATION - 13

contact found by Dr. Clifford, Dr. Comrie and the medical expert. See AR 48-49. As such, the hypothetical question the ALJ posed, like his RFC assessment, cannot be said to be completely accurate. Thus, the ALJ erred here as well.

Plaintiff argues the ALJ also erred in light of his errors in evaluating the opinions of Dr. Jump and Dr. Wright, and in assessing plaintiff's credibility. As discussed above, however, the ALJ did not err in this regard. Accordingly, no error at step five is found on that basis. Plaintiff goes on to argue that the ALJ's step five determination cannot be upheld, because the transcript of the vocational expert's testimony includes many sections in which that testimony is described as being inaudible, some of which appears to be supportive of a finding of disability. See AR 48-49. While there are some inaudible portions in the relevant portion of the transcript, it is entirely unclear that such portions contain evidence supportive of plaintiff's claims, nor has any showing been made as to exactly in what ways they appear to be supportive. Nevertheless, for the reasons discussed herein, remand for further administrative proceedings is warranted.

VI.   This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

REPORT AND RECOMMENDATION - 14

v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain with respect to plaintiff's mental residual functional capacity and his ability to perform other jobs existing in significant numbers in the national economy, this matter should be remanded to defendant for further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and thus should reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **October 7, 2011**, as noted in the caption.

DATED this 19th day of September, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15